UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WYATT T. HARRINGTON,

         Plaintiff,

  v.

EMMA E. DROWN, et al.,

         Defendants.
_____

<u>DECISION & ORDER</u>

21-CV-6634MWP

    On October 13, 2021, Wyatt T. Harrington, represented by attorney Jeffrey Wicks, Esq., commenced this action against the Ontario County Sheriff's Office, its investigator Lee Martin, and other unknown members of the Ontario County Sheriff's Office (collectively, "Ontario County Defendants"), and Emma E. Drown, alleging claims arising out of Harrington's arrest and prosecution based upon accusations made by Drown. (Docket # 1). On June 6, 2022, Drown filed an amended answer to the complaint and asserted several counterclaims against Harrington. (Docket # 27).

    Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment. (Docket # 20). By Order dated June 14, 2023, based upon a voluntary Stipulation of Discontinuance, Harrington's claims against the Ontario County Defendants were dismissed. (Docket # 46). Currently pending before this Court are Harrington's motions to proceed *in forma pauperis* and for appointment of counsel. (Docket # 64).

I.     **Motion to Proceed *In Forma Pauperis***

Harrington represents that Wicks informed him that he would no longer be able to represent him due to health concerns. (Docket # 64). Harrington maintains that he is not able to afford to retain new counsel to represent him. (*Id.*). As he explained, even before Wicks's medical issues arose, Harrington experienced difficulty paying Wicks's fees and negotiated with him for a lower rate; Harrington also indicated that his decision to dismiss his claims against Ontario County represented an effort to minimize the legal expenses associated with this case. (*Id.*).

In support of his application to proceed *in forma pauperis*, Harrington submitted an affirmation providing information about his financial condition, which reflects that he receives gross monthly wages in the amount of $3,360 and has approximately $100 in his checking account. (*Id.*). According to the affirmation, he does not own a vehicle, stocks, bonds, or any real property, and his only other sources of income are his parents, who have assisted him with Wicks's fees. (*Id.*).

Harrington affirms that he has monthly expenses of approximately $2,850, consisting of $750 in rent, $400 in groceries, $200 in utilities, and an additional $1,500 in unspecified monthly expenses. (*Id.*). According to Harrington, the individual with whom he resides pays the electric bill and half of the grocery expenses (which total $800 per month).

The purpose of the statute permitting litigants to proceed *in forma pauperis* is to ensure that "indigent persons have equal access to the judicial system." *Davis v. N.Y.C. Dep't of Educ.*, 2010 WL 3419671, *1 (E.D.N.Y. 2010). Nevertheless, "[i]n forma pauperis status is a privilege, not a right," *Bonano v. Costello*, 2019 WL 3081058, *2 (N.D.N.Y. 2019), and a litigant bears the burden of establishing his indigence, *see Potnick v. E. State Hosp.*, 701 F.2d

243, 244 (2d Cir. 1983). "[O]ne [need not] be absolutely destitute to enjoy the benefit" of the *in forma pauperis* statute. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 338 (1948). Rather, "an affidavit [to proceed *in forma pauperis*] is sufficient [if it states] that one cannot because of his poverty pay or give security for the costs [inherent in litigation] and still be able to provide himself and dependents with the necessities of life." *Id.* (internal quotations omitted); *see also Potnick v. E. State Hosp.*, 701 F.2d at 244 ("Section 1915(a) does not require a litigant to demonstrate absolute destitution; no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life"). The determination of whether an applicant qualifies for *in forma pauperis* status lies within the discretion of the court. *Pinede v. N.Y.C. Dep't of Envtl. Prot.*, 2013 WL 1410380, *2 (E.D.N.Y. 2013).

In his application, Harrington maintains that he earns $3,360 per month and incurs approximately $2,850 in monthly expenses. Of those expenses, $1,350 represents living expenses such as rent, utilities, and groceries, and the remaining $1,500 consists of unspecified expenses. First, given the absence of specificity, it is unclear that the full $1,500, or any portion of it, should be considered. Even if such expenses are credited, Harrington's monthly income exceeds his expenses by approximately $510. On this record, I am unable to conclude that Harrington is entitled to proceed *in forma pauperis*. *See Zografidis v. Richards*, 2022 WL 21756775, *3 (D. Conn. 2022) (denying *in forma pauperis* status where plaintiff's monthly income exceeded expenses by nearly $900 and where plaintiff had $10,000 in his checking account), *aff'd*, 2023 WL 7538211 (2d Cir. 2023); *Miller v. Smith*, 2021 WL 2894973, *3 (E.D.N.Y. 2021) (denying *in forma pauperis* application where plaintiff had a monthly income of $4,187.00, a checking account, and the ability to borrow money from friends); *Farmer v. Patino*, 2018 WL 10561914, *1 (E.D.N.Y. 2018) (denying *in forma pauperis* status where

3

plaintiff had monthly income, had received a large settlement payment, and did not appear to have outstanding financial obligations or to be in any debt); *Lovell v. Consol. Edison of N.Y., Inc.*, 2015 WL 2250374, *2 (E.D.N.Y. 2015) ("[b]y his own account, [plaintiff] would still have approximately $550 of his monthly income and $1,309.02 in his savings account after paying each of these monthly expenses").

Moreover, "[i]n assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.'" *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (quoting *Williams v. Spencer*, 455 F. Supp. 205, 208-209 (D. Md. 1978)); *see Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984) ("in ruling on motions to proceed *in forma pauperis*, other courts have considered the income of interested persons, such as spouses and parents, in evaluating the funds available to the movant"), *aff'd*, 788 F.2d 1 (2d Cir. 1985).  In his application, Harrington suggests that his parents have contributed funds to pay Harrington's legal expenses.  (Docket # 64 at 2 at ¶ 2(g)).  Although it is unclear how much money they have contributed, Harrington's parents' willingness to assist with legal fees supports the Court's conclusion that Harrington has failed to demonstrate his entitlement to proceed *in forma pauperis*.  Accordingly, Harrington's motion for permission to proceed *in forma pauperis* **(Docket # 64)** is **DENIED**.

II.     <u>Motion for Appointment of Counsel</u>

It is well-settled that there is no constitutional right to appointed counsel in civil cases.  Although the court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C.

§ 1915(e), *see, e.g.*, *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), as explained above, Harrington has not demonstrated that he is indigent.

Even assuming Harrington were able to establish his inability to afford legal counsel, assignment of counsel is clearly within the judge's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following:

1. Whether the indigent's claims seem likely to be of substance;

2. Whether the indigent is able to investigate the crucial facts concerning his claim;

3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4. Whether the legal issues involved are complex; and

5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); see also *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider carefully the issue of appointment of counsel because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are

5

therefore poor." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards promulgated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 58, that appointment of counsel is not warranted at this time. As an initial matter, litigants are required to make reasonable efforts to secure counsel before requesting court-appointed counsel. *See McPherson v. N.Y.C. Health & Hosp. Corp.*, 1990 WL 170320, *1 (S.D.N.Y. 1990). Harrington's application describes only minimal efforts to obtain private counsel. I conclude that those efforts are insufficiently diligent to justify appointment of counsel. *See Holland v. Matos*, 2021 WL 1600143, *2 (S.D.N.Y. 2021) (denying appointment of *pro bono* counsel where application did not establish that litigant exhausted efforts to obtain counsel by, for example, making "further inquiries of [the local legal assistance organization] or other providers of *pro bono* counsel"); *Hesse v. SunGard Sys. Int'l*, 2013 WL 174403, *2 (S.D.N.Y. 2013) (denying appointment of *pro bono* counsel where plaintiff had not contacted legal clinics or other non-profit organizations).

Moreover, as stated above, a plaintiff seeking appointment of counsel must demonstrate a likelihood of success on the merits. *See id*. Harrington has not done so at this stage. Additionally, at this time Harrington has made no showing that he lacks the ability to investigate and present the essential facts of his claims.

On this record, plaintiff's motion for appointment of counsel **(Docket # 64)** is **DENIED without prejudice** at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654. To assist the plaintiff, the Court

will provide him with a copy of the *Pro Se* Litigation Guidelines and the Local Rules of Civil Procedure for the Western District of New York.

### III. Lifting of the Stay

On January 4, 2024, the parties filed a Stipulation indicating that, due to Wicks's ongoing health issues, Harrington would seek to substitute counsel and that Drown consented to a further extension of pending deadlines. (Docket # 62). Based upon that Stipulation, the Court entered an Order requiring any motion to substitute counsel and notice of appearance be filed with the Court on or before January 31, 2024. (Docket # 63). The Court also stayed all deadlines pending substitution of counsel or further order of the Court. (*Id.*).

Instead of filing a motion to substitute counsel with an accompanying notice of appearance, on January 30, 2024, Harrington filed the motions addressed above. (Docket # 64). At this time, Wicks is still the attorney of record. Because the Court has denied Harrington's request for appointment of counsel, it is not clear whether Harrington will wish to attempt to retain new counsel, whether he will proceed *pro se*, or whether Wicks's health may allow him to continue. Accordingly, on or before **June 3, 2024**, Harrington must advise the Court whether Wicks will be continuing as counsel; if not, on or before **June 3, 2024**, Harrington must file a motion either (1) to substitute counsel with an accompanying notice of appearance for that counsel, or (2) to permit Wicks to be relieved as counsel and Harrington to proceed *pro se*.

With respect to the outstanding deadlines, in accordance with this Court's July 26, 2023 Order (Docket # 50), Harrington must provide the supplemental discovery responses as directed in that Order, on or before **July 3, 2024**. Further, to the extent Harrington wishes to respond to the Declaration of Costs and Fees filed by Drown on August 4, 2023 (Docket # 57),

7

he must file any such response on or before **July 3, 2024**.  The Court will send copies to Harrington of the Court's July 26, 2023 Order (Docket # 50), the transcript of the Court proceedings discussing that Order (Docket # 58), and the Declaration of Costs and Fees (Docket # 57).

On or before **July 3, 2024**, the parties must submit a jointly proposed scheduling order to govern the remaining deadlines for this litigation.

**IT IS SO ORDERED**.

                                                        *s/Marian W. Payson*
                                                      MARIAN W. PAYSON
                                     United States Magistrate Judge

Dated: Rochester, New York
       April 30, 2024